IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT FUND | : : | |
| v. | : | Civil Action No. DKC 22-0963 |
| | : | |
| D'NARPO ELECTRICAL, LLC | : : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Employee Retirement Income Security Act of 1974 ("ERISA") action is a motion for default judgment filed by Plaintiff Trustees of the National Electrical Benefit Fund ("the Trustees"). (ECF No. 6).  The issues have been briefed, and the court now rules, no hearing being necessary.  Local Rule 105.6.  For the following reasons, Plaintiffs will be directed to supplement the motion for default judgment.

**I.   Background**

The Trustees are fiduciaries of the National Electrical Benefit Fund ("NEBF").  (ECF No. 1, ¶ 2).  "NEBF is a multiemployer employee pension benefit plan" under ERISA which is offered to employers through agreements with the International Brotherhood of Electrical Workers ("IBEW") or its affiliated local unions.  (*Id.*, ¶ 4).  Defendant D'Narpo Electrical, LLC ("D'Narpo") has a collective bargaining agreement with IBEW Local Union 98 under

which it is "obligated to submit contributions to NEBF on behalf of" covered employees. (*Id.*, ¶ 6). D'Narpo "has been delinquent in making contributions to NEBF on behalf of its" covered employees. (*Id.*, ¶ 8).

The Trustees filed this suit in April 2022, asserting an ERISA claim against D'Narpo for $18,448.47 in unpaid contributions for covered employees between May 2018 to September 2020. (ECF No. 1, ¶ 9). In addition, the Trustees claimed $4,635.56 in interest due on the unpaid contributions, $3,912.73 in liquidated damages, $753.90 audit costs, and unspecified attorneys' fees and costs. (*Id.*, at 5). Total claimed damages were $27,750.66

The Trustees served D'Narpo on May 4, 2022. (ECF No. 4). When Defendant failed to respond timely, Plaintiffs moved for clerk's entry of default, (ECF No. 5), and it was entered the same day, (ECF No. 7). The Trustees simultaneously moved for default judgment and attorneys' fees. (ECF No. 6). The Trustees now seek a total judgment, less attorneys' fees and costs, of $28,155.50. (*See* ECF No. 6-4). The amounts claimed in the complaint remain the same except for interest, which is now set at $5,040.40, accounting for additional interest accrued since the filing of the complaint. (*See* ECF No. 6-7, at 2). The Trustees also request $2,090.80 in attorneys' fees and costs. (ECF No. 6-1, ¶ 10).

## II.  Standard of Review

Pursuant to Fed.R.Civ.P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Where a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment, upon the plaintiff's application and notice to the defaulting party, pursuant to Rule 55(b)(2).  A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court.  *See Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002).  The United States Court of Appeals for the Fourth Circuit has a "strong policy" that "cases be decided on their merits," *id.* (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party, *see SEC v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Upon entry of default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not.  *Lawbaugh*, 359 F.Supp.2d at 422.  Rule 54(c) limits the type of judgment that may be entered based on a party's

3

default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *Meindl v. Genesys Pac. Techs., Inc. (In re Genesys Data Techs., Inc.)*, 204 F.3d 124, 132 (4th Cir. 2000).

Where a complaint does not sufficiently specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (*citing SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).  While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' Dist. Council Pension v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at *3 (D.Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

**III. Analysis**

The Trustees have not provided enough information for the court to determine the amount to be awarded.  In the affidavit submitted to support the damages amount, Brian Killian, Contribution Compliance Manager at NEBF, attests that the Trustees' audit found that D'Narpo had $19,563.56 in unpaid contributions over the relevant period. (ECF No. 6-4, ¶ 4).  The Trustees only claimed in $18,448.47 in unpaid contributions because "[p]rior to initiat[ion] of this action, NEBF determined that [D'Narpo] had previously made an overpayment in the amount of $1,115.09, which it applied as a credit against the amounts uncovered in the audit." (*Id.*, ¶ 5).

The Trustees' calculations of the liquidated damages and interest amounts requested appear to be incorrect because they do not similarly account for the overpayment.  The Trust Agreement authorizes the Trustees to assess and receive "liquidated damages [in] an amount up to twenty percent (20%) of the amount found to be delinquent" and "lost interest from the delinquent amounts, to be calculated at a ten percent (10%) annual rate compounded monthly throughout the period of delinquency[.]"  (ECF No. 6-5, at 7). The liquidated damages and interest amounts Trustees claim are calculated from the $19,563.56 amount, not the $18,448.47 amount which accounts for D'Narpo's overpayment.  On its face, that appears to make the liquidated damages amount incorrect because it

is not calculated on the true delinquent amount.  The interest is also probably incorrect, but the court cannot easily determine by what amount.  Because the interest rate is compounded monthly, it is necessary to know when the overpayment was made to calculate interest owed.  However, Mr. Killian does not further specify when D'Narpo made the overpayment and it appears that D'Narpo did so either before or during the relevant period (May 2018 to September 2020).

The Trustees will be required to supplement their motion for default judgment to inform the court when D'Narpo made the overpayment and to recalculate the amount of liquidated damages and interest requested accordingly.  To the extent that the Trustees believe that the current amounts requested are correct, they should explain why.

## IV.  Conclusion

For the foregoing reasons, Plaintiffs will be directed to supplement the motion for default judgment.  A separate order will follow.

              /s/
_____
DEBORAH K. CHASANOW
United States District Judge
